# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-08115-001-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Durnell Trimble, | |
| Defendant. | |

Pending before the Court are Defendant Durnell Trimble's Motion to Suppress Evidence (Doc. 43), Motion to Suppress Statements (Doc. 44), and Motion to Dismiss Superseding Indictment (Doc. 45). For the following reasons, the Court grants the motions to suppress evidence and statements, and denies the motion to dismiss.

## BACKGROUND

On January 26, 2018 at approximately 1:58 p.m., four Navajo Nation Police Department Officers in three police vehicles approached a house in Ganado, Arizona on the Navajo Reservation to investigate reports of gun and drug activity. Specifically, the Officers were investigating a recent theft of firearms from a Criminal Investigations Office, as well as reports that an individual had been selling drugs and alcohol on the property.

The house is surrounded by a barbed wire fence, and the driveway entry to the home has a gate in front of it. Throughout the property are several "No Trespassing" signs, both on the exterior fencing, as well as on the housing structures. Before approaching, the officers did not obtain a warrant to search the property. After passing through an open

gate, the officers parked their patrol cars in a dirt area near the house where other vehicles were parked and approached the home. Officers Alejandro Dayea and Dean Goldtooth approached the front door to perform a "knock and talk" and the three remaining officers positioned themselves around the front of the home to see if anyone would flee from the house. Ms. Beulah Begay and her boyfriend, Mr. Keenan Smith, responded to the officers. She informed the Officers that Mr. Trimble was also staying at the residence, and the Officers asked if he could be questioned. Ms. Begay woke up Mr. Trimble, who came to the door to answer the questions. After answering the Officers' questions and producing identification, Mr. Trimble offered to call the homeowner, Ms. Terrilyn Curley. Ms. Curley then gave the Officer Dayea permission to search the house.

The Officers then instructed Ms. Begay, Mr. Smith, and Mr. Trimble to sit in the living room while the conducted the search of the home. Officer Goldtooth stood in the living room with them during the search.

The search of the house did not produce any contraband. After this initial search was finished, Officer Dayea announced to Ms. Begay and Mr. Trimble that the Officers were leaving the premises. But after exiting the home, one of the officers noticed a bottle of alcohol on the floorboard of Ms. Begay's vehicle and proceeded to search her car over her objection.[1] At this point, Mr. Trimble asked why the officers had not left the premises as they indicated they would. While the officers were searching Ms. Begay's vehicle, Mr. Trimble asked if he could use the restroom. Officer Goldtooth escorted him to the bathroom. At some point prior to this escort, Officer Goldtooth performed a pat down of Mr. Trimble. While Mr. Trimble used the restroom, Officer Goldtooth remained standing near the outhouse.

Another officer then noticed that Mr. Trimble's car had a plastic bag which he believed contained alcohol. At some point before the Officers searched Mr. Trimble's vehicle, they parked one of the patrol cars behind it. (*See* Exs. 7, 30). Mr. Trimble and Officer Dayea disagreed about whether alcohol could be seen from the window of the

---

[1] Possession of alcohol is illegal on the Navajo Reservation.

vehicle.  Yet none of the officers took photos of the vehicle before they began to search it.  The sole photographs offered in evidence demonstrate an opaque plastic bag on the seat of the truck that completely covers its contents.  Further, all parties acknowledge that Mr. Trimble's vehicle had tinted windows, and so any observations of the plastic bag were made through the tinted windows.  In addition to the alcohol, officers spotted the butt of a rifle in the back of the vehicle.  Despite Mr. Trimble's objections, the officers instructed Mr. Trimble to provide them with the keys so they could search the vehicle for contraband.  Once officers opened the truck and removed a shotgun and ammunition, Officer Dayea asked Mr. Trimble if he was aware of the weapons.  At this point, Mr. Trimble admitted that he had a previous felony conviction and he did not want them to search the vehicle for that reason.  The search of Mr. Trimble's vehicle produced three firearms, several rounds of ammunition, and approximately 23 grams of methamphetamine.

Mr. Trimble now moves to suppress the evidence produced in this search.  (Doc. 43).  He also argues that his statements to the officers should be suppressed because he was seized without probable cause in violation of his Fourth Amendment rights.  (Doc. 44).  Finally, he argues that the indictment should be dismissed because the officers failed to preserve exculpatory evidence.  (Doc. 45).

## DISCUSSION

### I.  Legal Standard

"The burden of proving that a warrantless search falls within an exception to the warrant requirement is on the government."  *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012).  It is also "the government's burden to show that evidence is not fruit of the poisonous tree."  *United States v. Shetler*, 665 F.3d 1150, 1157 (9th Cir. 2011).  However, it is the Defendant's burden to demonstrate Fourth Amendment standing.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).

### II.  Motion to Suppress Evidence

#### A.  Fourth Amendment Standing

"Fourth Amendment rights are personal rights which, like some other constitutional

1    rights, may not be asserted vicariously." *Rakas v. Illinois*, 439 U.S. 128, 174 (1978).  An
2    overnight guest has a reasonable expectation of privacy in a residence sufficient to establish
3    standing.  *Minnesota v. Olson*, 495 U.S. 91, 98–100 (1990).  But a temporary guest, such
4    as someone who is only at a residence for a specific transaction, does not have the same
5    expectation of privacy to establish standing.  *Minnesota v. Carter*, 525 U.S. 83, 90–91
6    (1998).  While Defendant Trimble arrived on the property in the early hours of the day of
7    the search, he was asleep when the officers arrived.  And Mr. Trimble had previously stayed
8    on the premises for several nights.  More than a mere transactional guest, Mr. Trimble has
9    Fourth Amendment standing to challenge this search.

10   **B.    "Knock And Talk"**

11   The government argues that the officers were permitted to approach the house and
12   knock on the door under the "knock and talk" exception to the warrant requirement.  Under
13   this exception, "the knocker on the front door is treated as an invitation or license to attempt
14   an entry, justifying ingress to the home by solicitors, hawkers and peddlers of all kinds."
15   *Florida v. Jardines*, 569 U.S. 1, 9 (2013) (internal citations and quotation marks omitted).
16   "[T]o qualify for the exception, the government must demonstrate that the officers
17   conformed to the habits of the country, by doing no more than any private citizen might
18   do."  *United States v. Lundin*, 817 F.3d 1151, 1159 (9th Cir. 2016).

19   The officers conformed to the parameters of the implied license here.  They
20   approached the property on a dirt road and entered through an open gate in the fencing
21   around the property.  They then parked their vehicles and two of the officers approached
22   the house.  Three officers stood outside the front of the house while the other two
23   approached.[2]  This conduct did not violate the implied license to approach the home, and
24   instead closely tracked what "any private citizen might do."  *Lundin*, 817 F.3d at 1159.

25   ---
     [2] Even if the officers violated the scope of the implied license by positioning themselves in
26   front of the house, that violation of the Fourth Amendment would not require suppression
     of the evidence, because it would not be a but-for cause of the subsequently discovered
27   evidence.  *See Michigan v. Hudson*, 547 U.S. 586, 592 (2006) (explaining that but for
     causality is a necessary condition for suppression).  Because there is no indication that the
28   subsequent interactions would have played out differently if the three officers remained in
     their vehicles, this violation would not require suppression of the evidence.

### C. Consent

Generally, "officers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs." *Kentucky v. King*, 563 U.S. 452, 463 (2011). Officers Dayea and Goldtooth were lawfully present on the property performing a knock and talk. Once they were received by Ms. Begay, they asked, and received permission from the homeowner to search the home. Ms. Curley did not place any time limits on the search of the home. After finishing that search, they observed contraband in Ms. Begay's car from the curtilage of the home. Then, the officers observed the plastic bag in Mr. Trimble's vehicle. Accordingly, the Court holds that even if the truck was parked in the curtilage of the home, the officers were lawfully present in the dirt area of the home at the time of the search of both vehicles.[3] Because the Court finds that the officers were lawfully present, the Court need not decide whether that area was curtilage or an open field.

### D. Search of Mr. Trimble's Vehicle

To lawfully search Mr. Trimble's vehicle, the Officers in this case must have been lawfully present in the area surrounding his vehicle and must have had probable cause to search his vehicle. *See California v. Carney*, 471 U.S. 386, 390 (1985). Where the automobile exception applies, as here "officers may search an automobile without having obtained a warrant so long as they have probable cause to do so." *Collins v. Virginia*, 138 S.Ct. 1663, 1670 (2018).

The Supreme Court recently addressed the scope of the automobile exception where the vehicle was parked in curtilage in *Collins v. Virginia*. *Id.* The question presented in *Collins* was "whether the automobile exception justifies the invasion of the curtilage" of a home. *Id.* at 1671. Rejecting the government's argument that it could perform a warrantless search of a vehicle in the curtilage, the Court explained that police officers

---

[3] Defendants argue that Ms. Curley did not have the ability to consent to the search of the home, given that she was only the homeowner and that the officers did not know that at the time of the search. But this argument ignores the fact that Mr. Trimble himself disclaimed the ability to give consent for the officers to search the premises and referred them to Ms. Curley for purposes of obtaining consent.

must have "a lawful right of access to a vehicle in order to search it pursuant to the automobile exception." *Id.* at 1672. The key difference between *Collins* and this case is that the officers here received permission to search the house and its curtilage from the homeowner, and Mr. Trimble initially disclaimed the authority to give them that permission. Unlike *Collins*, where the application of the automobile exception would have permitted an otherwise unlawful entry into the curtilage, the officers here were lawfully present in the curtilage at the time when they saw the contraband in Mr. Trimble's truck.

While the officers were lawfully present when they were examining Mr. Trimble's truck, the fact that the officers observed a plastic bag from the window of Mr. Trimble's vehicle which they suspected contained alcohol is insufficient to establish probable cause. In the submitted photographs, the bag is opaque, and there is no photographic evidence at all that shows an alcohol bottle, or any part thereof, visible from or through the plastic bag. Certainly, there is no way that the officers could have seen a stamp in the bottle or on a label affixed to it that would have indicated it held 375 milliliters. (See Exs. 9, 14). Further, Officer Dayea admits that the officers did not photograph the plastic bag as it was before they opened the vehicle—despite the fact that Mr. Trimble disagreed with them about whether there was a visible alcohol bottle in the vehicle. Indeed, the officers did not take any photos of the contents of Mr. Trimble's truck before they opened it.

And because Defendant Trimble did not inform the officers that he was a felon until they gained access to his vehicle over his objection, the officers cannot now point to that fact in conjunction with the rifle that was observed from the back of the vehicle to establish probable cause. Because the officers search of Mr. Trimble's vehicle was not supported by probable cause, the Court must suppress the evidence obtained by that search.

**III.    Motion to Suppress Statements**

In general, "[t]he exclusionary rule applies both to direct products of an illegal search—i.e., the physical evidence found during the search itself—and to indirect products of the illegal search—i.e., statements or physical evidence subsequently obtained in part as a result of the search—if they bear a sufficiently close relationship to the underlying

illegality." *United States v. Shelter*, 665 F.3d 1150, 1157 (9th Cir. 2011) (citing *United States v. Ladum*, 141 F.3d 1328, 1336–37 (9th Cir. 1998)). To determine whether the statements were fruit of the poisonous tree, courts first ask "whether the statements were the product of the illegal searches," and, if so, "whether they were nevertheless so attenuated from the searches that suppression was not warranted." *Id.* Here, the causal connection between the search of Mr. Trimble's vehicle, and the subsequent incriminating statements is sufficiently close to warrant suppression. Without the illegal search of Mr. Trimble's vehicle, it is highly unlikely that the police would have obtained the incriminating statements from him, where he admitted that the contraband in the vehicle belonged to him and that the weapons were contraband because he was a felon. Therefore, the Court will grant the Motion to Suppress statements.

## IV. Motion to Dismiss Indictment

Mr. Trimble finally moves to dismiss the indictment for failure to preserve evidence. (Doc. 45). This argument lacks merit for several reasons. First, Defendant Trimble has failed to establish that the evidence he alleges was not preserved—feminine bath products found in his truck—would be exculpatory. *California v. Trombetta*, 467 U.S. 479, 489 (1984). And the materials that he does point to that could potentially include some exculpatory material, including a notebook, were documented by police. (*See* Ex. 125). Second, Mr. Trimble failed to demonstrate the police officers destroyed any potentially exculpatory evidence or acted in bad faith after opening the vehicle. *Trombetta*, 467 U.S. at 484; *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009) (explaining that to prove Due Process clause violation, must demonstrate that the officers acted in bad faith) Accordingly, the motion is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence (Doc. 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Statements (Doc. 44) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Superseding

Indictment (Doc. 45) is **DENIED.**

Dated this 28th day of May, 2019.

_____

G. Murray Snow
Chief United States District Judge